Timothy P. Dillon, Esq. (SBN 190839)
tdillon@dillongerardi.com
Sunjina K. Ahuja, Esq. (SBN 226130)
sahuja@dillongerardi.com
DILLON & GERARDI, APC
5872 Owens Avenue, Suite 200
Carlsbad, California 92008
Telephone: (858) 587-1800
Facsimile: (858) 587-2587

Attorneys for Plaintiff, RUSSELL TORRISON

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| EDWIN RUSSELL TORRISON, a.k.a. RUSSELL TORRISON, an individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>KASEY THOMPSON, an individual, KST HOLDINGS, LLC, a Nevada limited liability company; ALL IN MEDIA, LLC, a United States business entity of unknown origins, and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: CV12-6939-ODW (MRWx)<br><br>**MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>FPTC:         August 25, 2014<br>Trial:         September 16, 2014<br>Courtroom:    1<br>District Judge:  Otis D. Wright, II<br>Magistrate Judge: Michael Wilner<br><br>Complaint Filed: August 10, 2012 |

# I.

## INTRODUCTION

The instant lawsuit is primarily a lawsuit for breach of contract brought by Plaintiff, Russell Torrison ("Torrison") against Defendants, All in Media, LLC ("AIM") and Kasey Thompson ("Thompson").  On or about June 2, 2008, Plaintiff, Torrison on the one hand and Defendants, KST Holdings, LLC (the defaulted defendant), AIM and Thompson on the other hand entered into a contract for the development of an online and print poker magazine entitled "All in Latino".  AIM, with Thompson as chief editor, had already created a United States based print and online magazine entitled "All In".  It was the intent of the parties to create a latino version of the United States based publication.  A true and correct copy of the contract is attached hereto as **Exhibit "A"** (the "Agreement").

Pursuant to the Agreement, Torrison was to provide $200,000 for All In's content, website creation, translation of content into various languages and for the launch of the All In Latino website.  The $200,000 was intended to be used toward the development of the All In Latino site and publication.  The All In Latino publication was to be held by a yet to be named entity referred to as "Newco" in the Agreement.  The Agreement further provides that "if **after 3 months from launch** of "All In Latino'"(Ex. "A", pg. 2, paragraph 6), if Torrison was not fully reimbursed, KST, Thompson or a personal company of Thompson was to pay Torrison the $200,000 he invested into the venture.

Pursuant to the Agreement, Torrison caused the $200,000 to be sent to AIM's Bank of America account in or around the latter part of June and early July of 2008.  The monies were not used toward the development or creation of the All In Latino website.  Instead, Thompson personally withdrew over $40,000 of cash within days of the monies having been deposited.  Further, neither Thompson nor AIM nor KST provided the required "All In" content for the creation of the publication.  Consequently, the site never made it off the ground.  While a simple placeholder was created on www.allinlatino.com, no real content was ever displayed and the site was never advertiser ready so that it could

MEMORANDUM OF CONTENTIONS OF LAW AND FACT

generate revenues.  A print version was never created.

Because no revenues were ever generated from the All in Latino venture, Torrison never got a return on his investment.  Consequently, the Defendants became obligated to return the $200,000.  When it became clear that the publication was a failure, that the content as contemplated was not going to be provided and that Defendants were not providing the needed support, Torrison wrote to Thompson on August 15, 2008 and demanded Thompson return his $200,000.  Thompson was non-responsive.  Thompson did not insist that the Defendants performed all of their obligations, Thompson did not insist that the "All In Latino" publication had in fact been launched, Thompson did not insist that he was not individually responsible and Thompson did not insist that the Defendants were not obligated to return the $200,000.  A string of emails spanning 2 years were sent by Torrison to Thompson wherein Torrison demanded the return of his $200,000.  Often times Thompson would not respond, however, when he chose to respond he acknowledged the debt, he acknowledged his personal responsibility for the debt and he made several representations that he was making all efforts to return Torrison his $200,000.  Thompson never once in a single email, phone call or conversation denied he was individually responsible on the Agreement.  By way of example, in a December 22, 2008 email, Mr. Thompson stated the following:

> I don't know what to say.  I literally do not have any money right now.  I have no problem with any interest that you would want to put on in and we can start the interest from back when it was due.  I have 2 deals that when go through (sic) will be able to pay you back in full.  One of the deals that All In Energy Drink is going public in January and I will liquidate my stock the day it hits the market and send to you.  Another one I cannot talk about, but will be able to pay you back in full with any interest.  I have taken Garin's advice and put my tangible assets like a painting, guitar, and sports memorabilia up for sale.  Anything that comes from that will be sent to you as well till we are even.  I have never not paid a debt and will not start with yours. (Plaintiff's Ex. 192).

In the above email, Thompson specifically acknowledged he was personally indebted to Torrison, that the monies were owed and that he was attempting to sell off his personal stock and tangible assets in order to pay off his personal debt to Torrison. These types of emails from Thompson continued on up through 2010 wherein Thompson (when he decided to be responsive to Torrison) would repeatedly state he personally owed Torrison $200,000 and was making every effort to pay him back. None of the defendants, including Thompson, ever paid Torrison the $200,000.

AIM and Thompson's main defense is that the All In Latino website "launched" and therefore AIM and Thompson are not obligated to pay Torrison any monies. However, Thompson has repeatedly admitted that he never saw a "launched" website, never viewed a print publication and has no documentary evidence whatsoever of a launched website. Thompson's only evidence is an unproduced You Tube video of a purported launch party and the biased hearsay testimony of a former business partner. Thompson has no print outs of a "launched" site, no emails containing the content of a "launched" site and no actual personal knowledge of whether a site actually launched or not. While Torrison contends the website never launched in any material respect, whether the website launched or not is irrelevant to whether the Defendants are obligated on the Agreement. It is undisputed that the All In Latino publication never generated any revenues. The Agreement is very clear that if within 3 months of launch of "All In Latino", Torrison has not been reimbursed from the proceeds of the venture, the Defendants will reimburse the monies. This is why up until the filing of this lawsuit, Thompson repeatedly represented that the monies were going to be repaid to Torrison.

Thompson's secondary line of defense is that he is not personally liable on the Agreement. However, he personally signed the Agreement and represented during several years of correspondences that he was personally liable on the Agreement. His last minute change of position lacks credibility. Further, even if Thompson was not personally liable on the Agreement, his financial dealings with both KST (the defendant with a default judgment) and AIM evidence that Thompson was an alter-ego of the two

MEMORANDUM OF CONTENTIONS OF LAW AND FACT

entities.  He owned a large percentage of KST, which, in turn, owned 100% of AIM.  He used AIM bank accounts to pay his monthly rental payments, frequent dinners, frequent starbucks visits, salon visits and gas.  He regularly utilized company money to pay his personal expenses.  Such conduct shows a lack of respect for the corporate existence of the two entities and renders Thompson an alter-ego of the entities.  As such, even Thompson's last minute contrived defense of not being personally responsible on the Agreement does little to exculpate him from liability.

## II.

## A SUMMARY STATEMENT OF CLAIM

Plaintiff asserts the following claims against Defendants, AIM and Thompson.

Claim 1:  Defendants, AIM and Thompson breached their contract with Plaintiff.

Claim 2:  Defendants, AIM and Thompson owe money to Plaintiff for money lent to them.

Claim 3: Defendants, AIM and Thompson owe Plaintiff for monies had and received.

## III.

## ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIM

The elements required to establish Plaintiff's claims are:

**A.     Breach of Contract**

1.     To recover damages from Defendants for breach of contract, Plaintiff must prove all of the following:

2.     That Plaintiff and Defendants entered into a contract;

3.     That Plaintiff did all, or substantially all, of the significant things that the contract required him to do, or that he was excused from doing those things;

4.     That all conditions required by the contract for Defendants' performance had occurred or were excused;

5.     That Defendants failed to do something that the contract required them to do; and

6.     That Plaintiff was harmed by that failure.

    i.   Money Lent

        a.   Defendants became indebted to Plaintiff in the amount of $200,000 for money lent to them by Plaintiff.

        b.   No part of this amount has been paid, and there is now due, owing and unpaid from defendant to Plaintiff the amount of $200,000, with interest on that amount at the rate of 10% from June 2, 2008.

    ii.  Money Had and Received

        a.   Plaintiff claims that Defendants owe him money. To establish this claim, Plaintiff must prove all of the following:

        b.   That Defendants received money that was intended to be used for the benefit of All In Latino;

        c.   That the money was not used for the benefit of All in Latino; and

        d.   That Defendants have not given the money to Plaintiff.

    iii. That Kasey Thompson is the alter-ego of All In Media, LLC and KST Holdings, LLC

        a.   There is such a unity of interest and ownership between the corporation and the alter ego defendant that their separate personalities no longer exist; and

        b.   The facts are such that if the privilege of separate existence is recognized, i.e., if the acts are treated as

those of the corporation alone, an inequitable result will follow.

## IV.

## ANTICIPATED EVIDENTIARY ISSUES

Plaintiff contemplates bringing the following motions in limine:

1)      Motion in limine to exclude the "YouTube Video of the All In Latino Launch Party".  In its exhibits list, Defendant has identified the above video, however, this video has never been produced via the disclosure or discovery process by Defendants. As such, Plaintiff contends the exhibit is inadmissible pursuant to FRCP 37(c)(1).

2)      Motion in Limine to exclude corporate records for All In Media, LLC and KST Holdings, LLC.  Defendants' exhibits 1005 and 1006 were labeled merely as "Corporate Records for All In Media, LLC" and "Corporation Records for KST Holdings, LLC".  The exhibits were not provided to Plaintiff and were not particularly described.  The description of the exhibits is overly broad and Plaintiff is thus unable to identify what documents encompass these exhibits.  As of the date of this writing, Plaintiff has not received this exhibits.  Plaintiff intends to move to exclude this evidence as not having been previously produced or identified by Defendants.

3)      Motion in Limine to exclude witnesses not previously identified.  In their contribution to the Joint Summary of Expected Witness Testimony, Defendants have identified several witness not previously disclosed.  These witnesses are Brett Calap, Brendan McKinnon and Michael Clarke.  Because Defendants have failed to previously disclose them, they should now be precluded from offering their testimony at trial.

## V.

## ISSUES OF LAW

None, other than the interpretation of the operative Agreement.

## VI.

## BIFURCATION OF ISSUES

Whether Kasey Thompson is the alter-ego of All In Media, LLC and/or KST

Holdings, LLC is a matter that is to be separately tried by the Court and not a jury.

## VII.

## JURY TRIAL

Defendant, Kasey Thompson is exercising his right to a jury trial.

## VIII.

## ABANDONMENT OF ISSUES

Plaintiff has abandoned his fraud cause of action against Defendants.


Dated: August 18, 2014                   Respectfully Submitted;
                                         DILLON & GERARDI, APC


                                         s/ *Sunjina K. Ahuja*
                                         Sunjina K. Ahuja, Esq.
                                         sahuja@dillongerardi.com
                                         Attorney for Plaintiff,
                                         EDWIN   RUSSEL   TORRISON   a.k.a.
                                         RUSSELL TORRISON

# EXHIBIT "A"

**Terms – NEWCO & LooseLines.com with KST Holdings LLC.          June 2, 2008**

## ALL IN COMMITMENTS

1. (KingCo.) will create, design, and maintain all of the 100+ gigs of website content for the Latin and South American market. It will be translated in 5 languages; Spanish, Portuguese, and English with Mandarin, Cantonese, etc. to come in the future.
2. NEWCO will provide a new Latin magazine issue (both digitally and in print) every month to be distributed in airports, newsstands, and casinos all throughout Latin and South America.
3. NEWCO has secured the following marketing deals to create massive profit for the web and print in the Latin and South American market:

   - Full Tilt Poker          $250 CPA
   - Absolute Poker          30% Gross
   - Party Poker             (Still in negotiation between 22-25% gross)
   - Ultimate Bet            30% Gross
   - Doyle's Room            $225 CPA
   - Poker Stars             $200 CPA
   - LooseLones.com          (Win/Loss Sheet)

4. Other revenue sources forwarded to NEWCO will include but not be limited to paid advertisement, contests and other promotions.
5. LooseLines.com will be the exclusive Sports Book on all of the web sites and ongoing magazines. Exclusivity is to remain indefinitely. 'Exclusivity' becomes the property of NEWCO and can be transferred at the discretion of NEWCO
6. LooseLines.com will have a free 2 page spread in the blackjack section every month in the US 'All In' Magazine that reaches over 200,000 people. Said 2 page spread is to run indefinitely.
7. LooseLines.com will receive free 2 page spread in the blackjack and sports book sections of 'All In Latino'.
8. KINGCO will have the 5 sites and the Latin digital and print magazine up and running in 6 weeks.

KT

Page 1 of 2

**NEWCO & LooseLines.com COMMITMENTS**

1. NEWCO will provide All In Media US $200,000 as a license fee for the previous content (100+ gigs of content), websites creation, translation, and launch of All In Latino through NEWCO.
2. NEWCO will retain the first $200,000 in profits received into NEWCO.
3. NEWCO will retain 100% of NEWCO revenues until the initial funds are returned.
4. After the initial funds are remunerated to NEWCO, all further profits will then be divided as follows:

   - 33.3% Retained by NEWCO
   - 33.3% Scott King (company name to be determined) for maintaining, marketing, and staffing NEWCO
   - 33.3% All In Media US for ongoing license content for the digital and print version of All In Latino.

5. It will be the responsibility of NewCo. to account for and distribute funds as show above. It will have no other operational role or responsibility.


   **IF**

6. If after 3 months from launch of 'All In Latino', if NEWCO is not fully reimbursed, KST Holdings, LLC (or a subsidiary or personal company of Kasey Thompson) will return the remaining portion if any the $200,000 to NEWCO
7. In the event of KST Holdings LLC executing #6 above, 'All In' US will provide LooseLines.com 2 years from the date of execution of #6, free 2 page spreads in the blackjack section of 'All In' US. LooseLines.com will provide 'All In' US and NEWCO ad creative for their free ads.


_Kasey S. Thompson_ (signature)

Kasey S. Thompson

Russell Torrison

6-2-08

Date